OPINION
{¶ 1} Defendant-appellant, Theresa Ann Voss, appeals her conviction and sentence in the Warren County Court of Common Pleas for aggravated murder and a firearm specification. We affirm.
 {¶ 2} In the early morning hours of July 4, 1999, South Lebanon Fire Department Lieutenant James Butler and his crew were dispatched to the scene of a car fire on Mason-Morrow-Millgrove *Page 2 
Road in South Lebanon, Warren County, Ohio. Upon arriving at the scene, the firefighters discovered a Ford Mustang that was on fire. After putting out the main fire, Lieutenant Butler and his crew popped the vehicle's hood and trunk to ensure that the fire was completely extinguished. When they looked inside the trunk, they discovered a badly burned corpse. Lieutenant Butler ordered his crew to step away from the vehicle, then approached a police officer who was at the scene and advised him of the situation.
 {¶ 3} Detective Kenny McCloud of the Warren County Sheriff's Office was assigned to investigate the matter. His investigation revealed that the badly burned corpse was that of Troy Temar, and that the vehicle belonged to Temar's brother. Detective McCloud learned from the coroner that Temar's death was a homicide and that Temar had been fatally shot by two bullets fired from a handgun, possibly a Glock.
 {¶ 4} Detective McCloud interviewed 40 to 50 persons, which provided him with several suspects including Temar's former live-in girlfriend, Theresa Voss, [1] and Voss' brother, Eric Hoerlein. While interviewing Voss, Detective McCloud observed scratches on her face, arms, and legs; however, no charges were filed against Voss at that time.
 {¶ 5} The case remained unsolved until September 2005, when Hoerlein confessed his involvement in the cover-up of Temar's killing to his probation officer and Warren County investigators. Hoerlein told the officers that on the night Temar was murdered, he and Voss, using her vehicle, drove to an abandoned house on Mason-Morrow-Millgrove Road. Before Hoerlein got out of the car, Voss made him put on slip-on "beach shoes" and rubber gloves, which she had retrieved from the trunk. Hoerlein walked over to a Ford Mustang that was parked by the house and saw a body which he recognized as that of Voss' boyfriend, Troy Temar. Hoerlein felt for a pulse on Temar but could not find one. Voss told Hoerlein that *Page 3 
"she had got into a fight with [Temar] and she had to shoot him before he attacked her." Hoerlein and Voss poured gasoline over Temar's corpse and vehicle, and set them on fire to conceal any evidence of Voss' involvement.
 {¶ 6} Voss was arrested on September 13, 2005. She was indicted on one count of aggravated murder in violation of R.C. 2903.01(A), and a firearm specification pursuant to R.C. 2941.145(A). Her case was tried to a jury on the charges over a four-day period from October 23 through October 26, 2006. The state presented the testimony of a number of witnesses, including Detective McLoud and Hoerlein, who testified to the facts related above.
 {¶ 7} The state also presented recordings of telephone conversations that Voss had with her husband while she was in jail awaiting trial. In those conversations, which were played for the jury, Voss admitted that she shot Temar, but asserted that she did so in self-defense. She also told her husband that the shooting occurred because of her mental illness and her "over-exaggerated self-defense mechanism." At one point during their conversations, Voss admitted to her husband, "I'm not innocent."
 {¶ 8} The jury found Voss guilty as charged, and the trial court sentenced her to a prison term of 30 years to life on the aggravated murder charge, to be served consecutively with a three-year prison term on the firearm specification.
 {¶ 9} Voss now appeals, raising nine assignments of error. Such assigned errors shall be addressed in an order and manner that is conducive to our analysis of the issues raised therein.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF TAPED CONVERSATIONS OF THE ACCUSED AND HER HUSBAND WHICH OCCURRED WHILE THE ACCUSED WAS JAILED PRIOR TO TRIAL, VIOLATING HER DUE PROCESS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS." *Page 4 
 {¶ 12} In her first assignment of error, Voss argues the trial court erred by admitting into evidence recorded conversations between her and her husband while she was in jail awaiting trial. She contends the admission of such evidence is precluded by Ohio's "Wiretap" Statute set forth in R.C. 2933.51 et seq., and the Omnibus Crime Control and Safe Streets Act of 1968 set forth in Section 2511, Title 18, U.S. Code. In addition, Voss contends the admission of the subject recordings violated Ohio's spousal communications privilege governed by Evid. R. 501 and R.C. 2945.42. We find these arguments without merit.
 {¶ 13} Both R.C. 2933.52(A)[2] and Section 2511, Title 18, U.S. Code[3] prohibit the interception of a wire, oral, or electronic communication. R.C. 2933.51(B) defines "oral communication" as "an oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation." A similar definition of "oral communication" is contained in Section 2510(2), Title 18, U.S. Code.
 {¶ 14} The United States Supreme Court has stated:
 {¶ 15} "A [pretrial] detainee simply does not possess the full range of freedoms of an unincarcerated individual.
 {¶ 16} "* * * [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained *Page 5 
constitutional rights of both convicted prisoners and pretrial detainees. [Footnote omitted.]
 {¶ 17} `[C]entral to all other corrections goals is the institutional considerations of internal security within the corrections facilities themselves.' [Citations omitted.] Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." Bell v.Wolfish (1979), 441 U.S. 520, 546-547, 99 S.Ct. 1861.
 {¶ 18} In this case, the oral communications at issue include recorded telephone conversations between Voss and her husband made while Voss was in jail awaiting trial on the aggravated murder and gun specification charges. The record demonstrates there was a notice posted in the area of the jail where the prisoners used telephones informing them that their calls would be monitored. The telephones themselves, also contained a recording that calls would be monitored and recorded. As Voss was provided express notice that her telephone conversations would be monitored and recorded, she could not have had a reasonable expectation that her communications with her husband would be free from interception.
 {¶ 19} With respect to Ohio's spousal communications privilege, Evid. R. 501 states:
 {¶ 20} "The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in the light of reason and experience."
 {¶ 21} R.C. 2945.42 states in pertinent part:
 {¶ 22} "Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done in the presence or hearing of a third person competent to be a witness * * *."
 {¶ 23} Here, Voss' husband did not testify concerning communications made to him by *Page 6 
Voss. Instead, the evidence presented at trial included recordings of their telephone conversations made by the state. As stated, the record demonstrates the recordings were made after Voss was provided with notice that her telephone calls would be monitored and recorded. Accordingly, we find the admission of the subject recordings did not violate Evid. R. 501 and R.C. 2945.42.
 {¶ 24} Moreover, contrary to Voss' contention, we find the introduction of the recorded conversations did not violate the spousal communications privilege's public policy purpose of promoting marital peace. Again, Voss was provided with notice that her telephone calls would be recorded and monitored. The state monitors and records the telephone calls of convicted prisoners and pretrial detainees to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. See Wolfish, 441 U.S. at 546-547. The state's interest in monitoring and recording telephone calls made and received by pretrial detainees outweighs the public policy behind the spousal communication privilege. See id.
 {¶ 25} Based upon the forgoing, we find the trial court did not err in admitting recorded telephone conversations between Voss and her husband. Voss' first assignment of error is therefore overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE JURY'S FINDING THAT MS. VOSS ACTED WITH `PRIOR CALCULATION AND DESIGN' WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THEREFORE HER CONVICTION FOR AGGRAVATED MURDER VIOLATES THE DUE PROCESS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 28} In her second assignment of error, Voss argues the state failed to present sufficient evidence to convict her of aggravated murder because it failed to show that she acted with prior calculation and design. We disagree with this argument.
 {¶ 29} "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, *Page 7 
after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. McKnight,107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70, quoting State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 30} "Although the Revised Code does not define `prior calculation and design,' [the Ohio Supreme Court has] interpreted the phrase to require evidence of `more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill.'State v. Cotton (1978), 56 Ohio St.2d 8, 11 * * *. While `"[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves,"' momentary deliberation is insufficient. State v. D'Ambrosio (1993),67 Ohio St.3d 185, 196 * * *, quoting the 1973 Legislative Service Commission Comment to R.C. 2903.01.
 {¶ 31} "Nevertheless, where the evidence presented at trial `reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.' State v. Cotton, 56 Ohio St.2d 8
* * *, paragraph three of the syllabus." State v. Conway,108 Ohio St.3d 214, 220, 2006-Ohio-791, ¶ 38, 39.
 {¶ 32} In this case, the state presented evidence that Voss lived with Temar for approximately three years, during which time their relationship became strained and Temar asked Voss to move out. Temar then started dating another woman. He also began recording his telephone conversations with Voss and would only meet with her in public places.
 {¶ 33} The state presented evidence that the two bullets that killed Temar were fired from a Glock handgun. Hoerlein testified that he gave Voss a .40 caliber Glock about one *Page 8 
month prior to Temar's killing after Voss told him she needed the handgun to scare somebody. Temar's body was found off the driveway of an abandoned farmhouse, and there was evidence showing that Voss knew the location of the farmhouse prior to the killing. Evidence was also presented that Voss brought rubber gloves and slip-on shoes to the crime scene.
 {¶ 34} The foregoing evidence, if believed, was sufficient for a reasonable juror to find that Voss had sufficient time, opportunity, and motive for planning Temar's murder to constitute prior calculation. Moreover, the circumstances surrounding Temar's murder could support a finding of a scheme designed to implement Voss' calculated decision to kill him. Accordingly, we conclude the jury's finding that Voss acted with prior calculation and design was justified, and that sufficient evidence was presented at trial to support Voss' conviction of aggravated murder. See Conway, 108 Ohio St.3d at 220, 2006-Ohio-791, quoting Cotton, 56 Ohio St.2d paragraph three of the syllabus.
 {¶ 35} Voss' second assignment of error is overruled.
 {¶ 36} Assignment of Error No. 3:
 {¶ 37} "THE JURY'S VERDICT THAT MS. VOSS ACTED WITH `PRIOR CALCULATION AND DESIGN' WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY VIOLATING HER DUE PROCESS RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 38} In her third assignment of error, Voss argues the jury's determination that she acted with prior calculation and design in murdering Temar was against the manifest weight of the evidence. We disagree.
 {¶ 39} A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction is not supported by sufficient evidence. McKnight, 2005-Ohio-6046, at ¶ 71. In reviewing a manifest weight claim, an appellate court reviews the entire *Page 9 
record, weighing all of the evidence and the reasonable inferences that can be drawn from it, and considers the credibility of the witnesses in determining whether the jury or trier of fact "lost its way" in resolving conflicts in the evidence. Id.
 {¶ 40} The weight to be given the evidence presented and the credibility of the witnesses are primarily matters for the jury or other trier of fact since those persons are in the best position to observe the testimony of the witnesses and to use those observations in judging the credibility of the witnesses. State v. Gesell, Butler App. No. CA2005-08-367, 2006-Ohio-3621, ¶ 34.
 {¶ 41} As previously discussed, the record demonstrates that Voss obtained a Glock handgun one month prior to Temar's murder, knew the location of the farmhouse where Temar's body was found, and brought rubber gloves and slip-on shoes to the crime scene. While Hoerlein may have had significant credibility problems in light of his criminal record and his failure to report the crime for six years, it was not unreasonable for the jury to believe his testimony and that of the state's other witnesses. Id. Accordingly, after reviewing the record, we cannot say the jury lost its way in determining that Voss acted with the requisite prior calculation and design on the night she killed Temar, and therefore was guilty of aggravated murder.
 {¶ 42} Voss' third assignment of error is overruled.
 {¶ 43} Assignment of Error No. 4:
 {¶ 44} "MS. VOSS' RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS WERE VIOLATED BECAUSE SHE DID NOT RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED TO HER."
 {¶ 45} Assignment of Error No. 8:
 {¶ 46} "MS. VOSS' RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS WERE VIOLATED BECAUSE SHE DID NOT RECEIVE THE EFFECTIVE *Page 10 
ASSISTANCE OF COUNSEL GUARANTEED TO HER."
 {¶ 47} In her fourth and eighth assignments of error, Voss argues her trial counsel provided her with constitutionally ineffective assistance of counsel. We disagree.
 {¶ 48} To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that: (1) his or her counsel's performance was so deficient that "it fell below an objective standard of reasonableness[,]" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington (1984), 466 U.S. 668,687-688, 694, 104 S.Ct. 2052. A failure to make either showing will doom the defendant's ineffective assistance claim. Id. at 697.
 {¶ 49} "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." State v. Carter, 72 Ohio St.3d 545,558, 1995-Ohio-104.
 {¶ 50} First, Voss argues that her trial counsel provided her with ineffective assistance by failing to move to suppress the recordings of her conversations with her husband that were made while she was in jail awaiting trial. However, the record indicates that Voss' trial counsel did raise objections at trial to the admission of these recorded conversations, and this court has found that the trial court did not err in overruling such objections and in admitting the subject recordings into evidence. See, also, State v. Drumond, 111 Ohio St.3d 14,2006-Ohio-5084, ¶ 208.
 {¶ 51} Voss also argues that her trial counsel provided her with ineffective assistance by failing to request jury instructions on the lesser included offenses of murder and voluntary manslaughter, and on self-defense, where there was sufficient evidence in the record of a struggle between her and the victim to warrant such instructions. We disagree with these *Page 11 
contentions.
 {¶ 52} As an initial matter, contrary to Voss' assertion, the record demonstrates that the trial court did provide the jury with an instruction on the lesser included offense of murder. With respect to trial counsel's failure to request an instruction on voluntary manslaughter, such an instruction is warranted only when there is "evidence of reasonably sufficient provocation occasioned by the victim[.]" State v. Shane (1992), 63 Ohio St.3d 630, paragraph one of the syllabus. The record in this case is devoid of any such evidence. Moreover, Voss' trial counsel may have believed he stood a better chance of winning an acquittal for Voss by not giving the jurors an instruction on voluntary manslaughter, thereby requiring them to carefully consider whether the state presented sufficient proof to establish that Voss acted with prior calculation and design. This court is obligated to give such tactical and strategic trial decisions broad deference and to avoid second-guessing trial counsel's judgment. See Carter,72 Ohio St.3d at 558.
 {¶ 53} Our review of the record also demonstrates that there was insufficient evidence presented at trial to warrant an instruction on self-defense. As stated in State v. Gillespie, 172 Ohio App.3d 304, 308,2007-Ohio-3439, ¶ 12, 13:
 {¶ 54} "Self-defense is an affirmative defense, and the burden of going forward with evidence of self-defense and the burden of proving self-defense by a preponderance of the evidence is upon the accused. R.C. 2901.05(A); State v. Jackson (1986), 22 Ohio St.3d 281 * * *. To establish self-defense, a defendant must prove (1) that the defendant was not at fault in creating the situation giving rise to the affray, (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.State v. Robbins (1979), 58 Ohio St.2d 74 * * *. If a defendant fails to prove any one of these elements, he has failed to demonstrate that he *Page 12 
acted in self-defense. Jackson.
 {¶ 55} "In determining whether a defendant has sufficiently raised an affirmative defense such as self-defense to warrant a jury instruction, the test to be applied is whether the defendant has introduced evidence that, if believed, is sufficient to raise a question in the minds of reasonable persons concerning the existence of the offense. State v.Melchior (1978), 56 Ohio St.2d 15 * * *. Because proof of an affirmative defense creates reasonable doubt of a defendant's guilt, its proof is a bar to criminal liability for the offense charged."
 {¶ 56} Our review of the record has yielded no evidence demonstrating that a jury instruction on self-defense was warranted in this case. In fact, other than Voss' self-serving statements to her husband, the record contains no evidence establishing any of the elements of self-defense. Id., citing Robbins, 58 Ohio St.2d at 74. As a result, we find Voss' counsel was not ineffective in failing to request an instruction on self-defense.
 {¶ 57} Voss also argues her trial counsel was ineffective in failing to call Susan Wright as a witness. According to Voss, Wright would have testified that on the day Temar was killed, Hoerlein told her that he was angry with Temar, and would be seeing him later. Voss asserts that introduction of this testimony would have shown that she was not the only person with a motive to kill Temar.
 {¶ 58} Despite Voss' contention, Wright's putative testimony is outside the record on appeal, see App. R. 9(A), and thus not properly before us. Moreover, the fact that Wright's supposed testimony would have suggested that Hoerlein also had a motive to kill Temar does not create a reasonable probability in this case that but for her trial counsel's failure to present such testimony, the outcome of the trial would have been different. Strickland, 466 U.S. at 687-688, 694.State v. Were, Slip Opinion No. 2008-Ohio-2762, ¶ 222.
 {¶ 59} Finally, Voss argues her trial counsel was ineffective in failing to present evidence undermining Hoerlein's testimony that Voss called him for help on the night in *Page 13 
question. Specifically, she faults her trial counsel for not introducing evidence of Voss' phone records that allegedly show she made no phone calls to the restaurant where Horlein was. She asserts that this evidence would have "shattered" Hoerlein's "already shaky credibility."
 {¶ 60} Once again however, this evidence is outside the record on appeal and therefore not properly before us. Moreover, even if this evidence was properly before us, it would not have changed the outcome in this case since it was possible that Voss called Hoerlein using a telephone other than her cell phone. Id.
 {¶ 61} Based upon the foregoing, we find Voss' ineffective assistance of counsel claims without merit, and overrule her fourth and eighth assignments of error accordingly.
 {¶ 62} Assignment of Error No. 5:
 {¶ 63} "THE TRIAL COURT ERRED BY ADMITTING STATEMENTS MADE BY THE ACCUSED IN VIOLATION OF HER RIGHT TO COUNSEL UNDER THE CONSTITUTION OF OHIO AND THE UNITED STATES."
 {¶ 64} In her fifth assignment of error, Voss argues the trial court erred in admitting certain statements she made to police after she made an unequivocal request for counsel. We disagree.
 {¶ 65} In Edwards v. Arizona (1981), 451 U.S. 477, 101 S.Ct. 1880, the court held that when a suspect in custody expresses "his desire to deal with the police only through counsel," the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him." Id. at 484-485.
 {¶ 66} As explained in Davis v. United States (1994), 512 U.S. 452,114 S.Ct. 2350, however, a "suspect must unambiguously request counsel. * * * [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards v.Arizona * * * does not require *Page 14 
that the officers stop questioning the subject." Davis at 459.
 {¶ 67} In this case, the record demonstrates that during Major John Newsom's questioning of Voss, Voss said, "I think I need an attorney." In response to such statement, Major Newsom indicated, "If you want to stop and talk to an attorney, now is the time."
 {¶ 68} Believing that Voss had not made an unequivocal request for an attorney, Major Newsom continued questioning her, and she stated that on the night in question, Temar picked her up and they went to Lunken Airport, and then to French Park. Voss also denied that her brother had ever been involved in the incident. Voss argues on appeal that these statements harmed her case because they were inconsistent with her alibi defense.
 {¶ 69} In State v. Henness, 79 Ohio St.3d 53, 1997-Ohio-405, the court found that a suspect's statement that "I think I need an attorney," was not an unequivocal request for an attorney and therefore did not implicate the Edwards rule. Id. at 63. Similarly, we find Voss' statement that "I think I need an attorney" was not an unequivocal request for an attorney and that the rule in Edwards does not apply in this case.
 {¶ 70} Voss' fifth assignment of error is therefore overruled.
 {¶ 71} Assignment of Error No. 6:
 {¶ 72} "THE TRIAL COURT ERRED IN PERMITTING DR. UPTEGROVE TO TESTIFY TO THE CONTENTS OF THE AUTOPSY REPORT AND VIOLATED THE DUE PROCESS RIGHTS OF THE DEFENDANT UNDER THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 73} In her sixth assignment of error, Voss argues the trial court erred in permitting Dr. Russell Uptegrove to testify about the contents of an autopsy report because the state failed to present sufficient foundational testimony to meet the business records exception to the hearsay rule under Evid. R. 803(6). Voss however, failed to object to Dr. Uptegrove's testimony at trial and has therefore waived all but plain error. See State v. Clemons, *Page 15 82 Ohio St.3d 438, 444, 1998-Ohio-406.
 {¶ 74} Crim. R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the [trial] court." Generally, Crim. R. 52(B) applies only when the trial court's error clearly affected the outcome of the trial. See State v. Hill, 92 Ohio St.3d 191, 205, 2001-Ohio-141;State v. Moreland (1990), 50 Ohio St.3d 58, 62; State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus. Reviewing courts are to take notice of plain error only "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long at paragraph three of the syllabus. State v.Frazier, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 206.
 {¶ 75} In this case, Voss has failed to establish that the outcome of her trial would have been clearly different if the trial court had determined that the state failed to lay an adequate foundation to allow the autopsy report to be admitted into evidence. Even had the trial court so ruled, Voss has failed to demonstrate that the state would have been unable to present additional foundational testimony to allow the autopsy report to be admitted.
 {¶ 76} Voss also alleges that her trial counsel was constitutionally ineffective in failing to object to Dr. Uptegrove's testimony regarding the autopsy report, which Voss asserts should have been excluded as hearsay under Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354. In State v. Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, however, the court held that autopsy reports are admissible as business records even in light of Crawford. Id. at ¶ 80-82. Therefore, the failure of Voss' trial counsel to object to the admission of the autopsy reports did not constitute ineffective assistance.
 {¶ 77} Finally, Voss argues the trial court erred by not prohibiting the state from presenting opinion testimony from the autopsy report. Again, however, the court in Craig held that presentation of such opinion testimony is permissible. Id. at 320-322, ¶ 79, 87, and 88. Voss' argument as to this issue is therefore without merit. *Page 16 
 {¶ 78} Based upon the foregoing, we find the trial court did not err in permitting Dr. Uptegrove to testify concerning the autopsy report. Voss' sixth assignment of error is overruled.
 {¶ 79} Assignment of Error No. 9:
 {¶ 80} "MS. VOSS' RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS WERE VIOLATED BECAUSE, DESPITE OBJECTION, INADMMISSIBLE EVIDENCE OF ALLEGED BAD ACTS WAS ADMITTED INTO EVIDENCE."
 {¶ 81} In her ninth assignment of error, Voss alleges the trial court erred by admitting into evidence videotapes and audiotapes of her July 6 and 8, 1999 interviews with police which contain references to prior bad acts she allegedly committed. She contends that any evidence of such prior bad acts should have been ruled inadmissible pursuant to Evid. R. 404(B), [4] and therefore, the trial court committed reversible error by admitting the exhibits in question. We disagree.
 {¶ 82} Evid. R. 103 states in pertinent part:
 {¶ 83} "(A) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
 {¶ 84} "(1) Objection. In case the ruling is one admitting evidence, timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context[.]"
 {¶ 85} In this case, Voss failed to raise a timely objection at trial to the admission of the videotapes and audiotapes of which she now complains. These tapes were played before the jury at trial, without objection from Voss. She objected to the admission of the tapesonly at *Page 17 
the conclusion of the state's case. In overruling this objection, the trial court stated, "There was no objection to [the tapes] being played during the course of the case and I'm not going to edit them at this point."
 {¶ 86} By failing to raise a timely objection at trial to the admission of the videotapes and audiotapes, Voss waived all but plain error in the admission of this evidence. Clemons, 82 Ohio St.3d at 444,1998-Ohio-406. A review of the record demonstrates that the admission of this evidence did not amount to plain error.
 {¶ 87} As to the portion of Voss' interview during which the police asked her about an incident in which she attempted to hire a person to kill or to "rough up" another, this evidence was relevant to showing Voss' motive for murdering Temar. When one of the detectives asked Voss about an allegation that Voss wanted to hire someone named Pete Lawson to rough up or even kill another person named Rick Byrd, Voss denied that she wanted Lawson to kill Byrd, but admitted that she did want Lawson to "[j]ust rough [Byrd] up a little bit." Voss told the detectives that she did this for Temar's benefit because she "just wanted Troy to be okay."
 {¶ 88} This testimony was relevant to showing Voss' motive for murdering Temar, because it showed the depth of her feelings for him. This, in turn, showed that Voss was willing to break the law for Temar's benefit, and it helps explain why Voss would have felt betrayed when Temar broke off their relationship, which gave Voss a motive for murdering Temar.
 {¶ 89} As to the portion of the interview in which Voss was asked about assaulting her ex-husband, we again note that Voss' trial counsel did not raise a timely objection at trial to the admission of this evidence. We conclude that the trial court's failure to exclude this evidence, sua sponte, did not amount to plain error under Crim. R. 52(B).
 {¶ 90} The evidence in this case demonstrates that Voss acknowledged seeing Temar *Page 18 
from around 10:00 p.m. to 12:30 a.m. on the night he was murdered. Voss' brother gave her a Glock handgun approximately one month before Temar was murdered, after Voss told him that she needed a gun to scare someone. The coroner reported that Temar was fatally shot two times, possibly with a Glock. Voss' brother testified that Voss told him she shot Temar "before he attacked her."
 {¶ 91} Detetectives McCloud and Logan, who interviewed Voss shortly after Temar's murder, testified that when they asked Voss if she had killed Temar, she answered, "I don't think so." Detective Logan also testified that he saw Voss drive by the crime scene the day after Temar was murdered. When Detective Logan questioned Voss about this, she initially denied it, but then acknowledged that she may have done so.
 {¶ 92} One of Voss' fellow inmates, Carla Williams, testified that Voss said she was in prison because she had killed someone. She also testified that on one occasion, Voss had expressed her belief that a drug dealer was worse than someone who killed only one person because drug dealers caused more harm to a larger number of persons.
 {¶ 93} Finally, Voss' phone records showed that she called Temar around 80 times between June 7, 1999 and July 3, 1999, but after July 3, 1999, she never called Temar again, despite the fact that she told Detective McCloud on July 6, 1999 that she was not aware that Temar had been murdered.
 {¶ 94} Under these circumstances, the trial court's decision to admit into evidence tapes that contained references to Voss' prior bad acts did not amount to plain error. Accordingly, Voss' ninth assignment of error is overruled.
 {¶ 95} Assignment of Error No. 7:
 {¶ 96} "THE CUMULATIVE EFFECT OF ALL THE ABOVE-REFERENCED ERRORS CREATED AN UNFAIR TRIAL AND THEREBY VIOLATED THE DUE PROCESS RIGHTS OF THE ACCUSED UNDER THE OHIO AND UNITED STATES CONSTITUTIONS." *Page 19 
 {¶ 97} In her final assignment of error, Voss argues that cumulative effect of the errors in these proceedings deprived her of a fair trial pursuant to State v. DeMarco (1987), 31 Ohio St.3d 191. Voss however has failed to show multiple instances of harmless error, and therefore, the cumulative error doctrine does not apply in this case. Id.
 {¶ 98} Voss' seventh assignment of error is overruled.
 {¶ 99} Judgment affirmed.
BRESSLER, P.J. and YOUNG, J., concur.
[1] In 1999, Voss' last name was "Clendenen."
[2] {¶ a} R.C. 2933.52 states in pertinent part:
{¶ b} "(A) No person purposely shall do any of the following:
{¶ c} "(1) Intercept, attempt to intercept, or procure another person to intercept or attempt to intercept a wire, oral, or electronic communication."
[3] {¶ a} Section 2511, Title 18, U.S. Code states in pertinent part:
{¶ b} "(1) Except as otherwise specifically provided in this chapter any person who —
{¶ c} "(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
{¶ d} "* * *
{¶ e} "shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection(5)."
[4] {¶ a} Evid. R. 404(B) states:
{¶ b} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Page 1