[Cite as *State v. Montgomery*, 2025-Ohio-784.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-01-002 |
| | : | O P I N I O N |
| - vs - | | 3/10/2025 |
| | : | |
| CHRISTIAN RAIDIN MONTGOMERY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2023 CR 000263

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Arenstein & Gallagher, and Elizabeth Conkin and Hal R. Arenstein, for appellant.

**HENDRICKSON, J.**

{¶ 1} Defendant, Christian R. Montgomery, appeals his conviction in the Clermont County Court of Common Pleas of 17 criminal charges consisting of various counts of murder, robbery, and burglary, along with their aggravated counterparts, and a single count of tampering with evidence.

**FACTUAL BACKGROUND**

**{¶ 2}** In July of 2022, several friends and acquaintances of Montgomery's, all minors, spent the day together drinking, showing-off firearms, and shooting the firearms at several different locations. Later in the day, the group arrived at Montgomery's home, where this activity continued. Eventually, the group traveled to the home of one of the group members, Roger Boehm. On the way, Montgomery and another member of the group exchanged weapons, briefly stepped out of the vehicle, and each shot off a round.

**{¶ 3}** Upon arriving at Boehm's home, the group continued to consume alcohol and show off firearms among each other before someone mentioned obtaining marijuana to smoke. The group then walked to the nearby home of a known drug dealer, Rusty Larison. Montgomery and another member of the group, Phoenix Sharp, made their way to the door. Rusty answered the door, and Rusty's son, Ryan Larison, was also in the home. After Rusty retrieved some marijuana, an altercation broke out, and Montgomery shot Rusty and Ryan, killing them both.

**{¶ 4}** Montgomery eventually surrendered to law enforcement and was subsequently indicted with the charges identified above. At trial, the State argued that Montgomery and the group had planned to rob Rusty. Evidence and testimony presented at trial showed that during the day while drinking and shooting firearms, members of the group discussed wanting to "hit a lick" or robbing someone. Sharp testified at trial that when marijuana was brought up that evening, he suggested to Montgomery and the group that they rob Rusty because Rusty lived nearby and had previously sold marijuana to Sharp. Sharp further testified that after entering Rusty's home and receiving marijuana from Rusty, Montgomery drew his gun and shot Rusty and Ryan during the ensuing altercation.

**SELF-DEFENSE CLAIM**

{¶ 5}    Montgomery, however, argued he killed Rusty and Ryan in self-defense. At trial, he  testified that he was not aware of any plan to rob Rusty, did not know Rusty, and had "no clue to where [the group was] going" to go to get the marijuana. Montgomery did not even want to partake in marijuana that evening. Nonetheless, Montgomery testified that upon arriving at Rusty's home, only he and Sharp went inside. According to Montgomery, the situation quickly escalated when Sharp ran out of the home with Rusty's marijuana without paying. Montgomery testified that when he attempted to follow Sharp, Rusty grabbed Montgomery and asked, "[W]here do you think you're going, motherfucker?" Montgomery asserted that after separating himself from Rusty, he attempted to explain that he did not know Sharp was going to steal the marijuana. Montgomery testified that he was not afraid of Rusty at this point and believed that Rusty was simply "pissed off" someone stole the marijuana.

{¶ 6}    However, once Rusty took a step back towards Montgomery, Montgomery pulled out his gun. According to Montgomery, all of this occurred in "[a] couple of seconds." Montgomery testified that Rusty "saw the gun . . . was stunned . . . [and said] [']what you going to do with that, motherfucker?  I'll kill you[']"  before launching himself at Montgomery while Ryan put Montgomery in a chokehold from behind. Fearing for his life at this point, Montgomery shot Rusty and grappled with Ryan before ultimately shooting him as well.

{¶ 7}    Montgomery acknowledged that after shooting Rusty and Ryan he: (1) left the scene; (2) did not call 911; (3) asked a member of the group to go back to the home to retrieve the durag and shoe Montgomery lost during the altercation; (4) changed his pants; (5) received a ride to his brother's apartment where he attempted to dispose of the pants and gun; (6) deleted his social media accounts; (7) hid from police at a relative's

house after learning the police were looking for him; and (8) considered running away to family in Texas before turning himself in. Montgomery agreed on cross-examination that "if someone is attacked, there would be no reason for that person to" do the things he did after killing Ryan and Rusty. However, Montgomery stated he "didn't want nothing [sic] to get tied back to [him], so [he] was trying to cover all the tracks."

## KEY ISSUES ON APPEAL

{¶ 8}   Two rulings by the court during trial are the focus of this appeal. The first is the trial court's refusal to instruct the jury on self-defense. In denying Montgomery's request for the instruction, the trial court noted there was no evidence outside of Montgomery's "bare assertions that [the group was] there to buy weed." In addition, the court concluded Montgomery was at fault in creating the deadly situation because "the use of deadly force [in] shooting Rusty [and Ryan] . . . in response to the circumstances, as described by Mr. Montgomery, [was] not reasonable . . . ."

{¶ 9}   The second ruling in question is the trial court allowing testimony regarding the group's shooting of firearms and other activities during the day. Overruling Montgomery's repeated objections, the trial court ruled such testimony was "relevant, and . . . part of the course of conduct that transpired that evening, [given] the proximity and time . . . [and] part of giving the jury the whole story."

## SENTENCING

{¶ 10} At the conclusion of the trial, the jury found Montgomery guilty on all charges. The trial court sentenced Montgomery to a total aggregate sentence of 66 years to life. Mongomery now appeals.

## FIRST ASSIGNMENT OF ERROR

{¶ 11} WHERE THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING [MONTGOMERY'S] REQUEST FOR A SELF-DEFENSE INSTRUCTION, USURPING

THE ROLE OF THE JURY, IT DENIED [MONTGOMERY] HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL IN VIOLATION OF THE SIXTH AMENDMENT.

{¶ 12} Montgomery argues on appeal that his testimony demonstrated he shot Rusty and Ryan in self-defense because he: (1) believed that he and those accompanying him were intending to buy marijuana from Rusty and not rob him; (2) feared for his life after both Rusty and Ryan grabbed him; and (3) could not retreat after being grabbed by Rusty and Ryan.

{¶ 13} A defendant is entitled to a self-defense instruction when, "(1) he was not at fault in creating the . . . affray, (2) he had a 'bona fide belief' that he was 'in imminent danger of death or great bodily harm' and his only way to escape was by using force, and (3) he did not violate a duty to retreat." *State v. Palmer*, 2024-Ohio-539, ¶ 23, quoting *State v. Messenger*, 2022-Ohio-4562, at ¶ 14; *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). To receive the instruction, a defendant must produce "'legally sufficient evidence' for every self-defense element." *Palmer* at ¶ 19, quoting *Messenger* at ¶ 19.

{¶ 14} "The standard for judging whether a defendant meets his burden and presents legally sufficient evidence is '[s]imilar[ ] to the standard for judging the sufficiency of the state's evidence,'" (Bracketed text in original). *Id.* at ¶ 20, quoting *Messenger* at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *Id.* This is a low standard. *Id.*

{¶ 15} However, a defendant cannot merely assert or speculate that he acted in self-defense. *State v. Towson*, 2022-Ohio-2096, ¶ 23 (12th Dist.); *State v. Jacinto*, 2020-Ohio-3722, ¶ 47 (8th Dist.). Stated differently, a self-defense instruction is not warranted where the defendant's testimony is otherwise unsubstantiated. *Id.* at ¶ 26-28, citing *State*

*v. Voss*, 2008-Ohio-3889, ¶56 (12th Dist.) (where there was no evidence in the record other than the defendant's own self-serving statement the act was in self-defense, the trial court did not err by failing to give an instruction on self-defense to the jury).

{¶ 16} Trial courts are "'in the best position to gauge the evidence before the jury and . . . determine whether the evidence adduced at trial was sufficient to require an instruction.'" *Palmer* at ¶ 21, quoting *State v. Fulmer*, 2008-Ohio-936, ¶ 72. In making this determination, trial courts "must consider only the adequacy of the evidence presented—not its persuasiveness." *Id.* The decision of a trial court to not provide a defendant with a self-defense instruction is reviewed for an abuse of discretion. *Id.* at ¶ 16. A trial court abuses its discretion when it acts "unreasonably, arbitrarily, or unconscionably." *Bowman v. Leisz*, 2014-Ohio-4763, ¶ 17 (12th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983). This "connotes more than an error of law or judgment." *Id.*

{¶ 17} As to the first element, the trial court did not abuse its discretion in refusing to instruct the jury on self-defense because Montgomery did not present legally sufficient evidence that he was not at fault for causing the affray with Rusty and Ryan. Montgomery attempted to manufacture a self-defense claim by stating he believed someone from the group was going to purchase the marijuana from Rusty before Sharp stole it, but there is no evidence to support this. Montgomery claimed he did not hear any details on where or how the group would obtain marijuana, and all other evidence and testimony presented at trial was contrary to Montgomery's assertion. Stated differently, Montgomery identifies no evidence, including his own testimony, that substantiates or would allow a trier of fact to reasonably infer that he and his cohorts arrived at Rusty's home intending to purchase marijuana. The fact that Montgomery took a gun with him to merely purchase marijuana makes such an inference even more unreasonable. Montgomery's simple, unsupported assertion is insufficient to satisfy the first element of self-defense.

**{¶ 18}** Montgomery's accounting of the altercation between himself and Rusty, even if true, also demonstrates he was at fault in creating the affray that led to Rusty and Ryan's deaths because it was only after Montgomery drew his weapon did a "stunned" Rusty threaten to kill Montgomery as Ryan put Montgomery in a chokehold from behind. As the trial court recognized, there was not a fight until Montgomery pulled out a handgun with no reasonable reason to do so.

**{¶ 19}** With respect to the second element, Montgomery could not have satisfied the requirement that he held a "bona fide belief" he was "in imminent danger of death or great bodily harm" and that his only way to escape was by using force because Montgomery testified he was not afraid of Rusty before drawing his gun. Brandishing a firearm under these circumstances was unreasonable and escalated a simple dispute over stolen marijuana that had lasted mere seconds up to that point.

**{¶ 20}** Ultimately, Montgomery had the burden of producing some degree of adequate evidence to support the notion that he shot Rusty and Ryan in self-defense. Having failed to do so, the trial court's decision not to give the jury a self-defense instruction did not display an attitude that was unreasonable, arbitrary, or unconscionable. That is to say, not giving the jury an instruction on self-defense was not an abuse of the trial court's discretion.

**{¶ 21}** This assignment of error is overruled.[1]

**SECOND ASSIGNMENT OF ERROR**

**{¶ 22}** WHERE THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING [MONTGOMERY'S] OBJECTIONS TO THE ADMISSION OF RULE

---

1. The parties raise other arguments as to whether a self-defense argument should or should not have been provided to the jury. However, these arguments are moot after concluding Montgomery cannot fulfill any one element of self-defense. *Palmer* at ¶ 19.

404(B) EVIDENCE, IT DENIED [MONTGOMERY] HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

**{¶ 23}** Next, Montgomery argues that the trial court's admission of testimony that other members of Montgomery's group had "engaged in random gun play" was in error. In summary, Montgomery asserts such testimony was irrelevant and unduly prejudicial because this activity occurred hours before Rusty and Ryan's deaths and "served no other purpose than to portray [Montgomery] as a reckless and irresponsible gunowner who surrounded himself with other armed, criminally-inclined teens."

**{¶ 24}** "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally speaking, all relevant evidence is admissible at trial unless it is barred by some other legal authority or rule. Evid.R. 402. One such rule is Evid.R. 404(B)(1) which states, "[e]vidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence is often referred to as "propensity evidence." *State v. Hartman*, 2020-Ohio-4440, at ¶ 21.

**{¶ 25}** However, Evid.R. 404(B) also states such evidence, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." R.C. 2945.59 similarly states, that "any acts of the defendant" may be used to demonstrate, among other things, the defendant's intent, motive, or plan "notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *Hartman* at ¶ 22. Whether evidence offered at trial was presented for an admissible

purpose under Evid.R. 404(B) is a matter we review de novo. *State v. Tunstall*, 2020-Ohio-5124, ¶ 36 (12th Dist.), citing *Hartman* at ¶ 22.

**{¶ 26}** Upon review, we conclude the testimony and evidence regarding the activities of the group during the day before and after meeting up with Montgomery was relevant and did not constitute prohibited propensity evidence. Courts have long recognized that a jury is "entitled to know the 'setting' of a case . . . [and] cannot be expected to make its decision in a void — without knowledge of the time, place and circumstances of the acts which form the basis of the charge.'" *State v. Miller*, 2023-Ohio-114, ¶ 92 (8th Dist.), quoting *State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980). *See also United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977), *cert. denied*, 431 U.S. 931 (1977).

**{¶ 27}** The testimony that Montgomery complains of was not presented to paint him and other members of the group as reckless, gun toting teenagers who acted in conformity with that description, but to "provid[e] the jury with insight into relevant issues[,] . . . meaning to . . . [subsequent] testimony[,] and context to the events leading to the charged offenses." *Id.* at ¶ 92, *compare State v. Thomas*, 2017-Ohio-8011 (holding that defendant's collection of "full Rambo combat knives" that was entirely unrelated to the charged crimes was not relevant and was presented merely to show "conformity with a character trait for violence").

**{¶ 28}** If the trial court had, as Montgomery desired, "limit[ed] the evidence to what was said and done in [Boehm's] bedroom immediately preceding the visit to Rusty's trailer," the jury would not have had "'a complete picture of what occurred' . . . [and could not] fully comprehend the acts that formed the immediate background of the charged crimes." *Id.*, quoting *Wilkinson* at 318. Here, the background information at issue clearly established that the group intended, prepared, planned, and had the opportunity to rob

Rusty, and it was admissible for that purpose. Additionally, we note the testimony showed Montgomery had a firearm on his person and displayed the firearm multiple times throughout the night, establishing his possession and control over the weapon.

{¶ 29} We overrule Montgomery's second assignment of error.

**THIRD ASSIGNMENT OF ERROR**

{¶ 30} [MONTGOMERY'S] CONVICTIONS ON COUNTS NINE THROUGH EIGHTEEN, FOR MULTIPLE COUNTS OF AGGRAVATED ROBBERY, AGGRAVATED BURGLARY, ROBBERY AND BURGLARY, ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 31} In his final assignment of error, Montgomery argues that his convictions for robbery, aggravated robbery, burglary, and aggravated burglary were against the manifest weight of the evidence because "the only evidence against [Montgomery] as to what took place in Roger's bedroom and later at Rusty's trailer is the unreliable, contradictory, self-serving and incredible testimony of his co-defendants . . . ."

{¶ 32} To determine whether a conviction is against the manifest weight of the evidence, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice" that a new trial must be ordered. *State v. Wilks*, 2018-Ohio-1562, ¶ 168. This "'power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 33} Montgomery's final assignment of error fails for multiple reasons. First, "[e]ven though this court may consider the credibility of the witnesses in conducting our

manifest-weight analysis," the testimony in this case does not give us "any justifiable reason to second-guess the credibility determinations" or verdict made by the jury. *State v. Nelson*, 2024-Ohio-5750, ¶ 23 (12th Dist.). This case – a double homicide – presents endless reasons that those involved, including Montgomery, may alter their stories or perhaps offer self-serving testimony. Montgomery's "conviction[s] [are] not against the manifest weight of the evidence simply because the trier of fact believed the testimony and evidence presented by the state." *State v. Nelson*, 2024-Ohio-5750, ¶ 23 (12th Dist.), citing *State v. Lunsford*, 2011-Ohio-6529, ¶ 17 (12th Dist.). Put simply, a manifest weight of the evidence analysis does not represent an opportunity to merely relitigate witness credibility issues.

**{¶ 34}** Furthermore, Montgomery's admitted efforts to cover his tracks substantiates his co-defendants' testimony that they intended to rob Rusty. Ohio courts have long held "a defendant's actions following a crime can demonstrate consciousness of guilt." *State v. Walker*, 2024-Ohio-5531, ¶ 74 (6th Dist.), citing *State v. Knuff*, 2024-Ohio-902, ¶ 211.

**{¶ 35}** This assignment of error is overruled.

**{¶ 36}** In conclusion, we find no reason to overturn Montgomery's convictions. All evidence presented at trial demonstrated that the deaths of Rusty and Ryan were senseless and that Montgomery was not entitled to a self-defense instruction.

**{¶ 37}** Judgment affirmed.

BYRNE, P.J., concurs.

PIPER, J., concurs in judgment only.