[Cite as *State v. Tamang*, 2026-Ohio-2354.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2025-10-111 |
| Appellee, | : | |
| vs. | : | OPINION AND JUDGMENT ENTRY 6/22/2026 |
| TANDI W. TAMANG, | : | |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2025-05-0599

Michael T. Gmoser, Butler County Prosecuting Attorney, and Stephen M. Wagner, Assistant Prosecuting Attorney, for appellee.

The Law Office of Wendy R. Calaway, Co., LPA, and Wendy R. Calaway, for appellant.

# **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Tandi W. Tamang appeals his conviction for rape, kidnapping, abduction, and gross sexual imposition. On appeal, Tamang argues that (1) the trial court erred in preventing a recorded police interview with Tamang as well as a forensic report from

being admitted into evidence at trial, (2) his convictions were against the manifest weight of the evidence, and (3) Tamang received ineffective assistance of counsel because his trial counsel (a) did not move to admit a diagram which contradicted the victim's trial testimony and (b) did not move to suppress statements made during a "confrontational" but voluntary discussion with law enforcement.

{¶ 2} We overrule all three assignments of error. Tamang's counsel never sought to admit the police interview in the first place, and expert testimony at trial covered all relevant information in the forensic report. As a result, even if error did occur, Tamang suffered no prejudice. In addition, discrepancies in the testimony and evidence presented at trial do not mean that Tamang's convictions represent a manifest miscarriage of justice meriting a new trial. Finally, even if we were to assume Tamang's trial counsel erred in not moving to admit the diagram and by not moving to suppress Tamang's statements to law enforcement, we cannot say the result of trial would have been any different given the other evidence presented at trial.

## Background

### *The Party*

{¶ 3} Tamang and some friends attended a party at a mutual friend's house. The victim, Jane,[1] also attended the party with her father, Gary. Tamang and Gary were friends. Though the party was described as a birthday party, it was held late in the evening and went into the early hours of the next day. Both Tamang and Gary drank heavily at the party. As Gary prepared to leave, he told Jane to wait in the garage for him while he went to the restroom.

---

1. "Jane," "Gary," and "John" are pseudonyms adopted for this opinion for the purposes of privacy and readability. See *State v. Cansler*, 2025-Ohio-2558, ¶ 1, fn. 1 (12th Dist.), *The Supreme Court of Ohio Writing Manual*, §16, at 115 (3rd Ed. 2024).

{¶ 4} Jane testified at trial that after Gary left, Tamang "pulled [her] hand and took [her] into [his] car." When in the car, Tamang took Jane's pants off in the back seat. Jane testified "his penis came to [her]" and went "a little bit inside" of "a girl's private part" (her vagina). She also testified Tamang's hands touched her private part on the inside as well. Gary and another friend of his, John, found Tamang and Jane inside the car—both largely unclothed. After pulling Jane out of the car, Gary and Tamang fought.

{¶ 5} Police were subsequently called out to the scene twice, but Gary and Jane had already left. Det. Chris Bundren, an officer with the Trenton Police department, responded to the scene. He testified at trial that when police first responded they had trouble figuring out what had caused the fight due to language barriers (Gary, Jane, Tamang, and others at the party are Nepali) and the fact that many in attendance were intoxicated. However, the second time police were called out, John explained that Tamang had attempted to have sex with Jane which prompted the fight.

*The Police Interview and Rape Kit*

{¶ 6} Several weeks after the incident, Det. Bundren interviewed Tamang. Their conversation was recorded. During the interview, Tamang conceded (1) he was in the backseat of car with Jane; (2) Jane's pants were off; and (3) he kissed Jane. Tamang described the kiss as a "family kiss" and asserted "he didn't remember anything after that" until the fight with Gary. Det. Bundren admitted on cross-examination that his interview with Tamang was "confrontational" and that Det. Bundren cussed, yelled at, and lied to Tamang about the use of DNA evidence to "prove this case." Det. Bundren asserted these were all techniques investigators learned and utilized. Det. Bundren also did not get an interpreter for the interview but testified that Tamang stated one was not necessary.

{¶ 7} Although Tamang's counsel initially filed a motion to suppress the statements Tamang made to police, the motion was later withdrawn. At trial, Tamang's

counsel sought to impeach Det. Bundren's credibility and undermine the probative value of the interview by playing a portion of it to "giv[e] context" to Tamang's statement that he kissed Jane because Tamang never stated where, when, and exactly under what circumstances he kissed Jane. After an objection by the State, the trial court concluded the video constituted hearsay and allowed for only part of the video to be played outside of the jury's presence so that Det. Bundren could refresh his memory on what exactly Tamang stated to him regarding the kiss. Det. Bundren then agreed with defense counsel that "Tandi never stated where [the] kiss occurred." Defense counsel never asked for the video to be admitted into evidence, and the video is not part of this court's record on appeal.

{¶ 8} During their investigation, law enforcement collected samples via a "rape kit" to determine if any DNA evidence could be identified. At trial, a forensic biologist testified the rape kit revealed no foreign bodily fluids (including semen) so a DNA test was never ordered. Defense counsel sought to admit the report into evidence, but the trial court denied the request.

*Children's Hospital Examination and Interview*

{¶ 9} Sometime after the party, Gary took Jane to Cincinnati Children's Hospital Emergency Department. A medical examination revealed a small abrasion on Jane's vagina at the labia. The trial court admitted photos of this abrasion into evidence.

{¶ 10} A social worker also interviewed Jane during this visit. During the interview and at trial, Jane (who was 12 at the time of the incident and 13 at the time of trial) indicated that Nepali was her primary language, that she felt uncomfortable talking about the incident and using terms such as "penis," "vagina," and "anus," and that she preferred to use more innocuous terms such as "thing" and "private part." The social worker who interviewed Jane testified that she "clarified" with Jane that Tamang vaginally penetrated

her with his penis.

*The Diagram*

{¶ 11} At trial, the defense heavily questioned Jane about a diagram in which Jane indicated that Tamang penetrated her anally and not vaginally. The record is unclear under what circumstances Jane filled out this diagram, including whether it was part of Jane's interview with the social worker. Though the jury requested to see the diagram during deliberations, the trial court denied that request because neither the State nor the defense moved for it to be admitted into evidence during trial.

*Trial Verdict and Sentence*

{¶ 12} The jury found Tamang guilty of rape, kidnapping, abduction, and gross sexual imposition. The trial court merged the abduction and gross sexual imposition offenses with the rape charge and sentenced Tamang to a mandatory prison term of 10 years to life on the rape offense, a three-to four-and-a-half-year prison term for the kidnapping offense, to run concurrent to the prison term imposed for the rape offense.

{¶ 13} This appeal followed.

**First Assignment of Error – Exclusion of Evidence**

*Standard of Review*

{¶ 14} "The admissibility of relevant evidence rests within the sound discretion of the trial court." *State v. Atkinson*, 2010-Ohio-2825, ¶ 7 (12th Dist.). Unless a trial court abuses its discretion, and the defendant suffers prejudice as a result, appellate courts will not disturb the decisions of the trial court as to the admissibility of evidence. *Id*. A trial court abuses its discretion when it acts "unreasonably, arbitrarily, or unconscionably." *Bowman v. Leisz*, 2014-Ohio-4763, ¶ 17 (12th Dist.).

*Analysis*

{¶ 15} Tamang argues the trial court erred in denying admission of the video

recording of Det. Bundren's interview with Tamang because showing it to the jury would have shown "abusive interrogation tactics . . . and the resulting lack of credibility of the statements elicited." The most fundamental problem with Tamang's argument is that defense counsel never moved for its admission. During a sidebar, the prosecution and defense argued about playing the video in the jury's presence. But during this argument defense counsel stated, "I'm not moving to admit. He testified on direct about Tandi saying that he kissed [Jane]. I'm giving context to that and impeaching on that statement by Det. Bundren."

{¶ 16} Had defense counsel actually sought to admit the video to undermine the probative value of Tamang's statements to Det. Bundren due to the "confrontational" nature of the interview—including the fact Det. Bundren did not provide Tamang with an interpreter (because Tamang asserted he did not need one)—such justification may very well have merited admission of the video. However, because defense counsel did not proffer the video, it is outside the record before this court. Moreover, because we have no ability (or authority) to review the video, we cannot evaluate Tamang's assertions regarding the contents.

{¶ 17} Tamang also asserts the trial court erred by refusing to admit the forensic report which demonstrated Tamang's DNA was not identified in the rape kit samples. He claims that the report was "powerful" and that barring its admission infringed his constitutional right to present an effective defense. We disagree. While such reports are sometimes admissible, exclusion of them—even in error—is frequently harmless where the trier of fact hears testimony on the contents of the report. *State v. Filiaggi*, 86 Ohio St.3d 230, 241 (1999). Therefore, assuming for the sake of argument the trial court did err (we make no such finding), the error was harmless because the forensic examiner provided testimony regarding the report, including that no foreign bodily fluids (including

semen) were identified in the rape kit, meaning no DNA evidence existed to tie Tamang to the rape.

{¶ 18} We overrule Tamang's first assignment of error.

**Second Assignment of Error – Sufficiency and Manifest Weight of the Evidence**

*Standard of Review*

{¶ 19} "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31 (12th Dist.), citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4.

{¶ 20} "A manifest weight of the evidence challenge examines the 'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *Madden* at ¶ 32, quoting *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 21} In reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and

determine the weight to be given to the evidence. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 114 (12th Dist.). "[I]nconsistencies in the evidence alone do not mean that a decision is against the manifest weight of the evidence." *State v. Deck*, 2021-Ohio-3145, ¶ 21 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Zitney*, 2021-Ohio-466, ¶ 15 (12th Dist.).

{¶ 22} "[A]lthough the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Billingsley*, 2020-Ohio-2673, ¶ 15 (12th Dist.), quoting *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

*Analysis*

{¶ 23} Tamang argues his conviction is against the manifest weight of the evidence because the evidence in the case was "riddled with inconsistencies" and not credible. In support, Tamang points to a diagram not submitted into evidence wherein Jane indicated that Tamang penetrated her anally and not vaginally. Tamang also bemoans that testimony regarding the party, including whether it was a birthday party and what time of day it occurred, was inconsistent, and that Jane did not know her own address, how long she lived in the U.S., how long she knew Tamang, and whether the assault occurred in the front or back seat of Tamang's car (or whether there even was a back seat in the car).

{¶ 24} The record is unclear under what circumstances Jane filled out the diagram referenced in his argument, including whether it was part of Jane's interview with the social worker. But at trial, both Jane and the social worker's testimony regarding Jane's accounting of events were unqualified—Tamang vaginally penetrated Jane. The social worker testified that she "clarified" this narrative because Jane (who was 12-13 years old

- 8 -

at the time) felt uncomfortable talking about the incident and using terms such as "penis," "vagina," and "anus" to describe what happened.

{¶ 25} Tamang's trial counsel cross-examined Jane heavily regarding this inconsistency. After being made aware of this inconsistency, it was up to the jury to determine Jane's credibility after considering factors such as her age and stated reticence in discussing the incident in explicit but more precise terms. This court also notes that anal *or* vaginal penetration can support a rape conviction. *See* R.C. 2907.01(A); R.C. 2907.02. So, even if the jury had been able to consider the diagram as evidence and believed its depiction of anal penetration to be more believable than Jane's trial testimony, the outcome of the trial would not have changed.

{¶ 26} As to the other inconsistencies Tamang points out, he never asserts in his briefing why such inconsistencies are relevant outside of an attempt to generally attack each witness' credibility. As we have previously acknowledged, "a manifest weight of the evidence analysis does not represent an opportunity to merely relitigate witness credibility issues." *State v. Montgomery*, 2025-Ohio-784, ¶ 33 (12th Dist.). Despite the perplexing amount of ink spilled on the topic, the jury was free to conclude that what happened between Tamang and Jane *at* the party was much more significant than *if* it was a birthday party or another type of party. Similarly, after Tamang's trial counsel questioned Jane on her address, how long she had been in this country, and where in the car Tamang raped her, the jury was free to evaluate what (if any) impact her answers had on her credibility. Stated differently, these inconsistencies in no way precluded the jury from believing that Tamang inserted his penis into Jane's vagina versus her anus (and legally it makes no difference).

{¶ 27} Tamang's arguments also ignore that (1) a medical examination of Jane revealed an abrasion on her vagina, (2) Gary and John testified they saw Tamang and

Jane in Tamang's car with their pants removed, and (3) Tamang's various admissions to the police, including that he kissed Jane (at some point during the party), that he and Jane were in the backseat of his car, and that Jane was not wearing pants.

{¶ 28} In our system of justice, the jury's entire job is to consider all of the evidence before it, determine how much credibility to assign to each witness, weigh those considerations and determinations in light of the trial court's instructions on the relevant law, and to reach a verdict. Tamang's purported contradictions do not come close to demonstrating that the jury "clearly lost its way and created such a manifest miscarriage of justice" that his conviction should be overturned. Instead, we see no injustice in the jury here doing exactly what it was charged to do.

{¶ 29} We overrule Tamang's second assignment of error.

**Third Assignment of Error – Ineffective Assistance of Counsel**

*Applicable Law*

{¶ 30} To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Courts determine deficient performance by asking whether counsel's conduct "fell below an objective standard of reasonableness" based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 688, 690. In turn, prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant's failure to sufficiently show either *Strickland* prong is fatal to a claim of ineffective assistance. *State v. Lloyd*, 2022-Ohio-4259, ¶ 31, citing *Strickland* at 697.

{¶ 31} Importantly, Ohio law supports a strong presumption that an attorney's assistance is effective. *State v. Kinsworthy*, 2014-Ohio-1584, ¶ 43 (12th Dist.). Consistent

with that presumption, "[i]t is not the role of the appellate court to second guess the strategic decisions of trial counsel . . . and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel." *Id.* In addition, counsel is not ineffective for raising futile arguments. *State v. Gray*, 2023-Ohio-338, ¶ 52 (12th Dist.).

*Analysis*

{¶ 32} In his final assignment of error, Tamang argues his trial counsel failed to provide effective assistance of counsel. First, he asserts that by not moving to introduce into evidence the diagram where Jane indicated Tamang anally penetrated her, Tamang's attorney "fail[ed] to provide the jury with the tangible evidence indicating that [Jane] either could not remember or did not know where she was allegedly assaulted[,] fall[ing] below the standard of reasonableness and prejudi[cing] Mr. Tamang's defense."

{¶ 33} Because the diagram was not admitted into evidence and the record is unclear as to what circumstances Jane filled the diagram under, our ability to review this issue is inherently limited. However, even if we were to assume trial counsel erred by not moving to admit the diagram (which we do not), we cannot say Tamang was prejudiced by this error. The jury knew of the diagram and the inconsistency it raised as evidenced by the fact that defense counsel brought it up multiple times during Jane's testimony and the jury requested to see it during deliberations. However, despite that inconsistency, strong evidence supported the conclusion Tamang vaginally raped Jane: (1) Jane's testimony, (2) the social worker's testimony, (3) Gary and John's testimony, and (4) photographic evidence of an abrasion on Jane's vagina. As a result, we conclude the outcome of Tamang's trial would not have been any different if trial counsel had moved for the diagram's admission.

{¶ 34} Tamang also claims that his trial attorney should have moved to suppress Tamang's statements to Det. Bundren and that doing so "would have determined that the

statements where not the product of a knowing and voluntary choice and would have suppressed them from use at trial." This stance is seemingly at odds with his first assignment of error—asserting the trial court erred in not admitting the recorded interview between Tamang and Det. Bundren because "the officer's abusive interrogation tactics" demonstrated a "resulting lack of credibility of the statements elicited." Nonetheless, Tamang's argument in favor of suppression also fails on the merits.

{¶ 35} Our review of this issue is also complicated by the fact that the video is not part of the record before us. But not only does Tamang ignore the fact that his trial attorney *did* file a motion to suppress before later withdrawing it, his assertion the motion "would" have been granted is *highly* speculative and unsupported. On appeal, Tamang's briefing equates Det. Bundren's "confrontational" interviewing tactics to what the Supreme Court of Ohio has previously deemed "inherently coercive tactics" that merit suppression of a confession, including "physical abuse, threats, deprivation of food, medical treatment, or sleep . . ." *State v. Clark*, 38 Ohio St.3d 252, 261 (1988). However, Tamang provides no authority to support the notion that Det. Bundren's interview tactics, like those at issue in *Clark*, demonstrate Tamang's statements were the product of threat, coercion, or otherwise involuntarily given. Indeed, nothing in the record contests Det. Bundren's testimony that Tamang voluntarily spoke with Det. Bundren and did not accept his offer of having a translator present. Though their conversation may have gotten "confrontational" at times, that does not make them "inherently coercive" under *Clark* or any other legal authority without evidence that the confrontation escalated beyond a constitutionally permissible point.

{¶ 36} But even if we were to assume that Tamang's trial counsel erred in not moving to suppress the statements (again, we do not make such a finding), we see no prejudice. Det. Bundren readily agreed with defense counsel during cross-examination

- 12 -

that his tactics were confrontational. With that context, the jury could decide what, if any, weight to then put on Tamang's statements to Det. Bundren. We cannot conclude the result of trial would have been different given the other testimony and evidence already analyzed elsewhere in this opinion.

{¶ 37} We overrule Tamang's final assignment of error.

{¶ 38} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Henrickson, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*